**Robert Gene SIMMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42716.**

Court of Criminal Appeals of Texas.

May 20, 1970.

Rehearing Denied July 15, 1970.

---

Victor R. Blaine, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Shelly P. Hancock, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Attorney, Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is rape by force and threats; the punishment, eight years.

Appellant filed motion, at the time of entering his plea of not guilty, requesting that the jury assess the punishment in the event a verdict of guilty was returned. He also filed written motion for probation in which he swore that he had never been convicted of a felony in this state or any other state.

Appellant's brief sets forth two grounds of error. Ground No. 1 is: "The Court erred in admitting into evidence State's Exhibit No. 3, the same being a record of a conviction for theft in the State of Louisiana over appellant's objection that he was without counsel at the time of such conviction."

Appellant cites and relies upon Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, which bars the use of a prior conviction obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, to support guilt

or enhance punishment for another offense.

The Supreme Court has not passed upon whether the rule applies where the prior conviction is used to impeach the credibility of the defendant as a witness in his own behalf or to impeach his testimony.

We hold that under the facts of this case Burgett v. Texas, supra, does not apply.

After the state had rested its case in chief and before appellant took the stand in his own behalf, appellant, through his counsel, moved the court to instruct counsel for the state not to discuss or allude to an alleged conviction had in the State of Louisiana "during the year on or about—around the year 1957, for the reason that at such time the defendant was a minor, that the proceedings had against him as a minor in the nature of petition to declare him a juvenile delinquent, that he was declared a juvenile delinquent and committed to a state training school for an indefinite period, that he did serve approximately eight months in state training school in Monroe, Louisiana as a result thereof, the defendant says that such matters are not admissible for any purpose by reason it was a civil proceeding and he was denied his right to counsel at the time and he being an indigent did not waive his right to be represented by counsel."

The court's ruling was:

"Counsel this is a premature motion at this point. However, I instruct the State's Counsel that they may use only the method of impeaching questions that display and are supported by good faith and the reason for asking such question."

On cross-examination appellant was asked and answered without objection:

"Q. (By Mr. Hancock) Have you ever been convicted of a misdemeanor involving moral turpitude in this state or any other state in the past ten years? By moral turpitude I mean stealing or perhaps beating your wife?

"A. Yes, sir.

"Q. Which?

"A. I have been convicted of two misdemeanors.

"Q. In fact, you have been convicted of both of those, beating your wife and stealing, haven't you?

"A. Misdemeanor theft. Yes, sir.

"Q. Wasn't that stealing?

"A. Well, you know more about law than I do.

"Q. In fact, the misdemeanor theft conviction was what date, if you know?

"A. I don't recall the exact date.

"Q. Could it have been March 3rd of 1965?

"A. Yes, sir, probably.

"Q. What was your punishment?

"A. Six months.

"Q. In the jail?

"A. Yes, sir.

"Q. And what was the date of your conviction for beating your wife?

"A. I don't recall.

"Q. Could that have been February 3rd, 1964?

"A. Probably.

"Q. What was your punishment for that?

"A. $25 fine.

"Q. Have you ever been convicted in this state or any other state in the past ten years of a felony offense?

"A. No, sir, I haven't.

"Q. *Is it a fact that on the 17th day of December, 1957, you were convicted of the offense of felony theft in the State of Louisiana, Parish of St. Charles, and received ten years in the State Penitentiary at hard labor?*

"A. *No, sir, it's not.*

(STATE'S EXHIBIT NO. 3 MARKED FOR IDENTIFICATION PURPOSES.)

"Q. (By Mr. Hancock) I will hand you what's been marked as State's Exhibit No. 3. This is purported to be a certified, exemplified copy of a judgment of conviction and sentence for the offense that I mentioned a moment ago.

"A. Yes, sir.

"Q. There is also a photograph here. Isn't that your picture?

"A. Yes, sir, it looks like it.

"Q. What is the date there that this picture was taken?

"A. It says July 11, 1959.

\* \* \* \* \* \*

"Q. This State's Exhibit No. 3 also includes an indicment for that offense, a statement of the case. Now, let's get to the instrument. Would you mind reading this?"

At this point appellant's counsel objected, stating: "If he wants to offer it in evidence I think we should have an opportunity to look at it."

Counsel for the state then tendered Exhibit No. 3 to defense counsel and offered it in evidence. In the jury's absence appellant's counsel offered the following objection, which the court overruled:

"Your Honor, the defendant objects to State's Exhibit No. 3 for the reason it purports to be a judgment of conviction for an offense of theft, wherein it is

alleged that the defendant received a sentence of ten years. It would show by its exhibit it was prosecuted upon information filed in the District Court of St. Charles Parish in Louisiana and not upon an indictment. I submit that under the law until proven otherwise is assumed to be the same as here in Texas and a person may not be prosecuted for a felony upon an information, for that reason we object to the *com*mission of this in evidence."

Appellant was then examined *by his counsel* in the jury's absence and testified:

"Q. Mr. Simmons, are you the person named in these papers?

"A. No, sir.

"Q. Were you ever convicted of a felony in Louisiana?

"A. No, sir.

"Q. Did you ever do any sentence in the penitentiary in Louisiana?

"A. No, sir.

\* \* \* \* \* \*

"Q. If you are the person named in these particular papers, were you represented by counsel at the time?

"A. No, sir.

"Q. You waived your right of representation by counsel?

"A. No, sir."

and the final rulings and objections:

"THE COURT: There will be no more testimony at all—if the exhibit is received, it stands or falls as an impeachment to the witness and not for any facts alleged to be proved.

"MR. BLAINE: We object to the use of it for purpose of impeachment. The testimony before the Court now is that he was not furnished counsel. He didn't waive it. For that reason we object. Whatever action was taken, was taken in

violation of his constitutional rights. We object to the use of it in any manner.

"THE COURT: Objection overruled.

"MR. BLAINE: Note my exception.

"THE COURT: Bring the jury in."

Exhibit No. 3 having been received into evidence, the cross-examination of appellant before the jury proceeded as shown by the following:

"Q. I will ask you to examine State's Exhibit No. 3, please. Would you examine that?

"After you have had the opportunity to examine No. 3, State's Exhibit No. 3, is it still your position that the Robert Simmons mentioned in this judgment of conviction for felony theft is not you?

"A. Yes, sir.

"Q. Even though your picture is in these papers?

"A. Well, I'm not certain that is my picture. I assume it is, but I know that's not me.

"Q. Are you sure of that?

"A. Yes, sir.

"Q. Are you as sure that you are not the man mentioned in these papers as you are sure that that young girl consented to the act of intercourse with you?

"A. She consented. Yes, sir.

"Q. And you are also sure this is not you in these papers?

"A. Yes, sir, I am.

"Q. They fingerprinted you in the State of Louisiana Penitentiary, didn't they?

"A. No, sir.

"Q. Were you fingerprinted in the State of Louisiana?

"A. No, sir."

The state's next witness was Rex Fullerton, in charge of identification and records division of the Harris County Sheriff's Office for the last nine years of his twenty years service in the fingerprint identification field, who testified that he took appellant's fingerprints during the noon hour. The fingerprint card was identified and introduced in evidence as State's Exhibit No. 4, over objection of appellant's counsel:

"* * * the defendant would object to it, any comparison of State's Exhibit No. 3 that was previously admitted, for the same reasons previously stated."

Without further objection, the witness whose qualification as an expert was shown, testified that he had examined the fingerprints depicted in State's Exhibit No. 3 with the fingerprints depicted in State's Exhibit No. 4 and in his opinion they were the fingerprints of the same person.

The record reflects clearly that all of the evidence relating to a juvenile proceeding in the State of Louisiana was offered by the defense, not by the state; and that Exhibit No. 3 offered by the state in regard to a felony conviction in the State of Louisiana was offered after appellant had sworn in his application for probation that he had never been convicted of a felony in this state or any other state, and had testified that he had never been convicted in this state or any other state in the past ten years of a felony offense, and that it was not a fact that on the 17th day of December, 1957, he was convicted of the offense of felony theft in the State of Louisiana and had received ten years in the State Penitentiary at hard labor or that he was fingerprinted in the State of Louisiana.

■ A person who is a witness may be asked, for the purpose of impeachment, if he has not been convicted for a felony or an offense imputing moral turpitude. If he denies it, the state, by proper proof,

may show the truth of such statement so denied. Wright v. State, 103 Tex.Cr.R. 534, 281 S.W. 864.

When the time asked about is not too remote, the defendant or other witness may be asked on cross-examination if he had ever been confined in the penitentiary on a charge of crime. Lights v. State, 21 Tex.App. 308, 17 S.W. 428. (There was no objection that the prior felony conviction was too remote.)

The witness can be compelled to answer that he has been convicted for a crime imputing moral turpitude, if such is the fact, or the record of conviction can be introduced to attack his credibility. Lee v. State, 45 Tex.Cr.R. 51, 73 S.W. 407. See also Parker v. State, Tex.Cr.App., 384 S.W.2d 712, holding that where the defendant on his direct examination testified that he had never been convicted of a felony and on redirect testified fully regarding a prior conviction for burglary, question propounded on cross-examination as to whether he had been convicted for burglary and his negative answer did not warrant reversal, even though the prior conviction had been set aside and the case dismissed. See also other cases listed in 1 Branch's Ann.P.C.2d 205, Sec. 189.

State's Exhibit No. 3 included "exact copies of the document of commitment, photographs and fingerprints relative to one Robert G. Simmons, a former inmate of this institution, certified on October 11, 1968, by the Record Clerk of the Louisiana State Penitentiary."

The front view "mugshot" or photograph of the Robert G. Simmons referred to in the commitment for theft to 10 years imprisonment in the State Penitentiary reflects:
"LA STATE PEN
49055
July 11, 1959"

The fingerprints in State's Exhibit No. 3 were shown by expert testimony to be identical with the fingerprints of appellant made during the trial.

The ground of error is not predicated upon the conviction for theft being a felony or that the conviction was upon an information.[1] Appellant at no time admitted having been convicted of a felony or that he was assessed a term of ten years in the Louisiana Penitentiary.

Ground of error No. 2 is: "The Court erred in refusing appellant's requested charge to the jury at the conclusion of the evidence upon the issue of punishment."

At the hearing before the jury on the issue of punishment it was stipulated "between appellant and his counsel and counsel for the State" that appellant (1) was convicted of aggravated assault on Nov. 21, 1967 and fined $100; (2) was convicted of carrying a pistol on or about March 10, 1968; (3) was convicted of aggravated assault on February 3, 1964, and fined $100; (4) was convicted of misdemeanor theft on March 3, 1965.

Also the state "retendered into evidence all of the evidence that had already gone before this jury concerning other prior convictions of this defendant."

Appellant's counsel stated that he was not willing to stipulate the Louisiana conviction, and had some testimony on that.

The court then inquired of state's counsel: "Are you offering that exhibit to this jury for consideration?

"MR. HANCOCK: Of course, State's Exhibit No. 3 is already before the jury. We retender that.

"THE COURT: All right, it will be received as marked.

---

1. Art. 2 of the 1928 Louisiana Code of Criminal Procedure as well as Art. 382 of the present Code of Criminal Procedure of that state authorize criminal prosecutions in a district court for felony theft to be instituted by indictment or information.

"MR. HANCOCK: And that is the stipulation of the state.

"THE COURT: Is that your stipulation, counsel?

"MR. BLAINE: Yes, Sir."

All the foregoing being offered by the state without objection, at the hearing on punishment, appellant was called as a witness in his own behalf and testified regarding his Louisiana conviction for auto theft for which he was arrested in November, 1957, when he was 18 years old. He testified that it was his understanding that he was going to appear as a juvenile and plead guilty; that he had no money or property; did not have an attorney representing him; was not offered the services of an attorney and did not tell the court he did not want an attorney.

He further testified that he served no time at the Louisiana State Penitentiary at Angolo, Louisiana, but was confined in the Louisiana Correctional Institution at DeQuincy for a little over a year and was released.

Following the cross-examination of appellant in regard to the Louisiana conviction, the state offered in evidence appellant's motion for probation in which he swore that he had never been convicted of a felony, appellant's counsel stating that he had no objection.

█ The charge requested and refused found in the record on appeal sought to have the jury instructed:

"You have heard testimony concerning a conviction for the offense of theft in Louisiana in 1957. If you believe from the evidence that at the time of such conviction the defendant was indigent and unable to employ counsel and that he was not furnished counsel nor waived his constitutional rights to counsel, then you will not consider such conviction for any purpose."

The requested charge made no distinction between whether the conviction for theft was the juvenile proceeding shown by evidence elicited from appellant by his counsel, or the felony conviction which appellant denied.

The requested charge refused by the court is not shown to have been presented prior to the reading of the charge at the punishment hearing. Whitaker v. State, Tex.Cr.App., 421 S.W.2d 905; see cases under Note 47, Article 36.15 Vernon's Ann.C.C.P.

Even so, the refusal of such requested charge under the evidence is not reversible error.

There is no doubt that appellant's counsel acted upon erroneous information in referring to a juvenile proceeding. The testimony of appellant leaves no doubt as to the source of such erroneous information.

We note in this connection that upon appellant's testimony the court submitted the motion for probation and counsel for appellant urged in argument that the jury find that appellant had never before been convicted of a felony in this or any other state, and recommend that he be granted probation.[2]

Assuming that the rule in Burgett, supra, is extended to impeachment and that under such rule a defendant or any other witness who testifies and swears that he has never been convicted of a felony cannot be impeached by introduction of evidence such as the commitment, photographs and fingerprints showing his testimony is false when

---

2. Section 3a of Art. 42.12 which provides that where the punishment assessed by the jury does not exceed 10 years, the jury may recommend probation "upon written sworn motion made therefor by the defendant, filed before the trial begins," further provides: "In no case shall probation be recommended by the jury except when the sworn motion and *proof shall show*, and the *jury shall find* in their verdict that the defendant has never before been convicted of a felony in this or any other state."

he testifies that *if* he was convicted of a felony and sentenced to a term of ten years in the Louisiana Penitentiary, he was indigent and without counsel, the error in the admission in evidence of State's Exhibit No. 3, though tainted, is harmless error. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, in which Mr. Justice Douglas, speaking for the majority, stated:

"Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton[3] can constitute harmless error, we must leave this state conviction undisturbed."

This court has cited and relied upon Harrington v. California and in cases such as this should welcome the seeming relaxation of the rule in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, as a step in the right direction.

The prosecutrix, a 17 year old employee of a leading Houston law firm, shared a two room apartment with her life long friend Gale _____. In the afternoon of April 3, Gale, having lost her job, moved out. Prosecutrix, who had no automobile, had arranged to move the next day.

The prosecutrix had been recently released from the hospital and was taking tranquilizers prescribed by her doctor.

The following statement of facts is quoted from appellant's brief: "The complaining witness, 17 years of age at the time of the offense, had casually known the Appellant for approximately three and one-half months, having met him at Bodittle's Night Club. On the night of the alleged rape she was asleep upon the floor of her apartment when she was awakened by a loud banging upon the door, opened it slightly and saw the Appellant standing there. He pushed the door open, pushing her against the wall and entered, closing the door behind him. She asked him what he was doing there and he inquired of the whereabouts of her roommate, Gale. She told him that Gale was spending the night elsewhere. At this time someone knocked upon the door, the Appellant went to the door, opened it and the complaining witness saw a girl's hand into which the Appellant dropped some keys and again shut the door. Prior to the knock upon the door she told the Appellant to get out, that she didn't want him there, but he stated he was going to spend the night with her and she replied, 'No, you're not'. She asked him who the girl was to whom he had given the keys and he first stated, 'None of your business', but subsequently told her it was Marsha, a girl that the complaining witness knew. The Appellant sat down and she told him to get up and leave, she felt real bad, having been dead asleep, but he made it clear he wasn't leaving. She told him, 'You either leave or there's going to be a fight'. She was dressed in a bra, pants, panty hose and robe. She sat down on the floor and asked him why Marsha had come to the door and he said he had given her her car keys so she could leave. The complaining witness then lay down on the floor and went to sleep. The next thing she knew the Appellant was sitting beside her on the floor with his hand on her robe, pulling it. He tore her robe and she started screaming, 'Get out of here'. He shoved her over on her back and put one hand on her throat and four fingers in her mouth to keep her from screaming. She did not bite him because he was choking her and she was scared also. He had his knees in her stomach and she was shoved up under the couch and coffee table when he said he didn't want to hurt her and she told him to leave her alone and get out of there. He told her to go ____ the bedroom and she said 'No', but he shoved her into the bedroom and told her to take her clothes off and she again said 'No', and he then tore the robe off, hit

3. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

her and shoved her down on the bed and took the rest of her clothes off. He kept slapping her because she was crying. He had a sheet across her, holding her down. She didn't kick him because he was on top of her. She didn't strike him because she was scared. He slapped her across her breasts and stated that gave women breast cancer. This scared her because her mother had died with breast cancer. He would apologize to her immediately after slapping her and said that if she didn't cooperate he would kill her and she believed him. He had intercourse with her. He would get up, walk off and come back, get up and walk off and come back again. She told him she was expecting her sister, so he got up and placed some furniture in front of the door and she then had no way of escape from the apartment. The most co-operation she gave him was not killing him. At about five o'clock a. m. the Appellant left, after she promised to go out with him that night. She straightened up the apartment, got dressed, picked up a butcher knife and went to a service station about one and one-half blocks away, called the police and said that she wanted to report an aggravated assault. She was ashamed to tell them she had been raped. She was later taken to the hospital and examined by a doctor who noticed that she has a small bruise below the left eye, a superficial scratch on the left·side of the neck, a bruise above the left knee and a superficial scratch above the right ankle and no other evidence of trauma. There was no evidence of any injury or damage to the vagina.

"The Appellant testified that upon seeing the complainant in such scanty attire, he became aroused, that he did undoubtedly tear her robe when he tried to roll her over, that she resisted at first but finally agreed to have intercourse with him but objected to moving into the bedroom upon the bed; that he never struck the complaining witness but may have scratched her when he awakened her and rolled her over. She removed all of her underwear after he had torn the bottons off the robe and she of-fered no resistance after his initial advances and co-operated with him. He made no threats."

Other testimony of the prosecutrix includes the following:

"Q. By his force and by the threats that he would kill you, were you in fear of your life?

"A. I was scared to death.

"Q. Did you think that if you did not consent that he would kill you?

"A. Yes, I did.

"Q. Or harm you?

"A. Yes, I did.

"Q. If it had not been for the fact that he had this sheet across your throat, the fact that he had hit you repeatedly several times, had slapped you, had threatened to kill you, would you have engaged in this sexual act with him?

"A. I would not have. He wouldn't have gotten through the door if he hadn't shoved his way in.

\*    \*    \*    \*    \*    \*

"Q. And then the actual intercourse and acts took approximately one hour, is that your testimony?

"A. Yes, It was 5:00 o'clock before he left, before I could get him to leave.

"Q. Now, what finally made him leave?

"A. Because I told him that I would go out with him that night if he would just promise me to leave.

"Q. Did you have any intention of going out with him?

"A. No. I knew I didn't have to be there. He said if I wasn't there when he came back that night, that I would be sorry."

Called in rebuttal, Gale _____ described the appearance of the prosecutrix

when she saw her at her sister's house on April 5: "She had bruises on both of her eyes and she had a patch on her neck and she had some bruises on her leg and she was just generally sick."

If the evidence which the state introduced at the guilt stage was harmless, it could hardly be seriously contended that its introduction at the punishment hearing would constitute reversible error, such evidence as to prior convictions having been re-offered and admitted along with evidence and stipulations as to other misdemeanor offenses, without objection.

The judgment is affirmed.

MORRISON, Judge (concurring).

While I realize that the judicial trend leans toward applying Burgett v. Texas, supra, to questions of impeachment, I would not extend it to the case at bar, where this appellant denied that he had been convicted of the felony in Louisiana and the state was able to prove that he was lying.

I therefore concur in the affirmance of this conviction.

ONION, Judge (dissenting).

Presiding Judge WOODLEY has painted with a master's hand a picture of the majority's views. His brush is broad and his strokes are bold, full of facts, details and law, resulting in a picture that is likely to overwhelm the casual viewer (or reader). Like many pictures, though, even good ones, there are areas that are merely glossed over, including the one upon which the case at bar must, in my opinion, turn.

The majority simply fails to come to grips with the real issue presented, or to construe the main thrust of appellant's argument in connection therewith as re-

quired. See Article 40.09, Sec. 9, V.A.C. C.P.

It is clear that appellant is not relying upon his briefly stated ground of error. He contends that the trial court erred in permitting him to be impeached at the guilt stage of the proceedings by the use of a void 1957 felony conviction from the State of Louisiana in that at the time of such conviction he was indigent, without counsel, and had not waived the right to counsel.

This appeal thus presents, apparently for the first time in this jurisdiction, the question of whether the rationale of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, bars and excludes the use of a prior felony conviction offered by the State to impeach the credibility of an accused testifying in his own behalf absent a clear showing that the conviction was not obtained in violation of the rule in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

I would hold that the principle and rationale of Burgett does so apply and that under the circumstances presented, the constitutional error was not harmless error under the doctrine of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

After the State had rested its case in chief at the guilt stage of the bifurcated trial under the provisions of Article 37.07, V.A.C.C.P. and before the appellant took the stand, he requested the court to instruct the State not to refer to or allude to a 1957 Louisiana conviction since he had not been represented by counsel at the time and had been indigent.[1] The court responded by remarking that the State would be limited to proper methods of impeachment acting in good faith.

1. Appellant's counsel also stated at the time that the conviction resulted from juvenile proceedings which he now ac-

knowledges was based on erroneous information.

On cross-examination at the trial which commenced on March 18, 1969, the appellant was asked:

"Q. Have you ever been convicted in this state or any other state *in the past ten years* of a felony offense?

"A. No, sir, I haven't." (emphasis supplied)

The State then inquired about a prior December 17, 1957, Louisiana conviction and he was shown State's Exhibit #3 which contained exemplified copies of an information charging the theft of an automobile of the alleged value of $350.00, "a statement of the case,"[2] a sentence reflecting a conviction on December 17, 1957, and the assessment of punishment at 10 years' confinement in the Louisiana state penitentiary, a photograph and a set of fingerprints.

It is obvious that at this point, even if the State's contention is correct, the appellant's answer was truthful—he had not been convicted of a felony in the past ten years.

In the jury's absence appellant testified on examination by his counsel. He denied he had been convicted of a felony in Louisiana, but admitted he had been the subject of juvenile delinquency proceedings in that state at which time he was without counsel, was not informed of counsel, did not waive counsel and none was appointed. He further testified that if he was the person named in State's Exhibit #3, he did not at the time have counsel nor waive the right to counsel.

State's Exhibit #3, relating to a pre-Gideon conviction, was silent as to counsel. Further, the trial court's attention was directed to the fact that the Louisiana felony conviction was based on an information, not an indictment, and that there had been no showing as to Louisiana law; and the presumption, in absence of such showing, is that the law is the same as in Texas.[3] The court overruled appellant's objection and permitted the introduction of State's Exhibit #3 before the jury for the purpose of impeachment.[3A] A fingerprint expert subsequently testified the fingerprints contained therein were identical with known prints of the appellant. A limiting charge on the impeachment testimony was given.

At the penalty stage of the proceedings, when the appellant refused to stipulate, State's Exhibit #3 was re-offered as part of the appellant's "prior criminal record." See Article 37.07, supra. It was available to the jury for the purpose of assessing punishment.

In Burgett the Supreme Court wrote:

"Presuming waiver of counsel from a silent record is impermissible. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1447, [16 L.Ed.2d 526]) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the

2. The very brief "statement of the case" appears to have been filed several weeks after conviction and was apparently designed for the use of penitentiary authorities. It reflects appellant was 18 years old at the time of the conviction.

3. See Holcombe v. State, Tex.Cr.App., 424 S.W.2d 635; Melancon v. State, Tex.Cr.App., 367 S.W.2d 690; Ex parte Cooper, 163 Tex.Cr.R. 642, 295 S.W.2d 906; Green v State, 165 Tex.Cr.R. 46, 303 S.W.2d 392. A conviction for a felony cannot be had in Texas without an in-

dictment. Art. I, Sec. 10, Texas Constitution, Vernon's Ann.St. Further, in view of such presumption it is noted that the plea of guilty to a non-capital felony before the court would have required counsel regardless of indigency. See Article 1.13 (former Article 10A), V.A.C.C.P.

3A. It should further be remembered that the issue of probation is not properly before the jury at the guilty stage of the proceedings. Stephens v. State, Tex.Cr.App., 417 S.W.2d 286.

right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

"The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' within the meaning of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705."[4]

In Subilosky v. Commonwealth of Massachusetts, 412 F.2d 691, the United States Court of Appeals, First Circuit, noted the problem but did not reach the substance of the contention in view of the threshold question concerning the failure to exhaust state remedies.

In Shorter v. United States, 412 F.2d 428, the Ninth Circuit Court of Appeals avoided the question of whether the rationale of Burgett is violated by the prosecution's use of prior convictions obtained without counsel for impeachment purposes. The question was not decided because, even though the prosecution had threatened to use the infirm 1958 and 1959 prior convictions from Louisiana, the defendant had taken the stand and admitted such convictions as a part of trial strategy "to soften the anticipated blow" without waiting

to see whether the prosecutor would change his mind. In a vigorous dissent Judge Roger D. Foley, relying in part upon People v. Coffey, 1967, 67 Cal.2d 204, 60 Cal. Rptr. 457, 430 P.2d 15, argued: "The rule, as I see it, is that a prior conviction, void under Gideon, cannot be used for any purposes, proof of guilt, enhancement of punishment or impeachment, without denying due process."

Judge Foley could not conclude that the error, being of federal constitutional dimension, was necessarily harmless error.[5]

In Tucker v. United States (D.C.1969) 299 F.Supp. 1376, the Court held the use of constitutionally invalid prior convictions on cross-examination for impeachment purposes was error but considered it harmless error since the defendant's testimony had been successfully impeached by prior inconsistent statements made to FBI Agents and by rebuttal testimony which rendered portions of the defendant's testimony improbable and untrue.

In Gilday v. Commonwealth, 247 N.E.2d 396, the Supreme Court of Massachusetts decided that the error there was harmless under Chapman v. California, supra, since the invalid prior out of state conviction was "not very serious" and there was strong evidence of guilt and two other prior in-state felony convictions for serious offenses.

---

4. The prior convictions in Burgett were alleged for enhancement in the indictment under the provisions of Article 63, Vernon's Ann.P.C. The trial was a unitary one under the former Code of Criminal Procedure. See Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the prior convictions in Burgett were actually withdrawn under appropriate jury instructions to disregard and were not utilized for enhancement, the Supreme Court nevertheless considered their admission into evidence "inherently prejudicial."

5. In his dissent Judge Foley called attention to the action of the United States Supreme Court in Bates v. Nelson, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21, wherein the judgment in Bates v. Wilson,

385 F.2d 771, was vacated and remanded to the Court of Appeals, Ninth Circuit, for further consideration in light of Burgett. See also Bates v. Dickson (N.D. Cal.S.D.1964) 226 F.Supp. 983. The majority in a "Memorandum on Petition for Rehearing" disagreed with Judge Foley's interpretation of Bates v. Nelson, supra.

Further, in his dissent Judge Foley stated: "I am impressed by the fact that although the Texas Court of Criminal Appeals affirmed the conviction because Burgett did not in fact suffer enhancement of punishment, and because the jury was instructed to disregard the prior convictions, the Supreme Court did not take the same view. Twice Justice Douglas stressed that the accused 'suffered anew' the denial of his right to counsel."

The Court concluded, however, by stating:

"In view of the existing uncertainty concerning the Burgett case, no record of prior conviction henceforth should be offered to impeach credibility unless the witness thus attacked can be shown to have had or waived counsel in the proceedings certified by the record."

In Boley v. State, 456 P.2d 447 (Nev.) which involved the impeachment of an accused by the use of prior convictions but did not necessarily involve the Burgett rationale, the Court said: "We hold, however, in any criminal case commenced after this date in which a prosecutor in this state asks such a question and is not prepared to document the conviction, we shall review the point with great care."

In People v. Shook, 67 Ill.App.2d 492, 214 N.E.2d 546, a pre-Burgett case, it was held that the admission of a prior conviction for impeachment purposes was improper where it had been determined that the prior conviction was a nullity.

In Re Dabney, 76 Cal.Rptr. 636, 452 P.2d 924, was a decision by the California Supreme Court. At Dabney's trial the prosecution introduced before the jury an unconstitutionally obtained prior conviction to prove his guilt by impeaching his testimony.

Noting it had repeatedly held that prior convictions obtained in violation of Gideon cannot be used for impeachment or any other purposes, the California court concluded the admission of the prior conviction was erroneous in light of People v. Coffey and Burgett, and that the error was harmful under the standards of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The court did not believe, however, that this type of error could never be found harmless within the meaning of Chapman, though the language in Burgett and the background provided by Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, made clear "that only the most compelling showing can justify finding such error harmless beyond a reasonable doubt."

Following the decision in the above cases, the United States Supreme Court handed down its decision in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, on June 2, 1969, holding that the Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, error there presented was harmless error. While denying that it was departing from Chapman or diluting it by inference, the majority held that "the case against Harrington was so overwhelming" that the "violation of Bruton was harmless beyond a reasonable doubt." [6]

6. The dissent in Harrington accused the majority of overruling Chapman and holding that constitutional error in the trial of a criminal offense may be held harmless if there is "overwhelming" untainted evidence to support the conviction.

Thus it would seem that a mere "contribution" to a conviction by way of tainted evidence would not prevent application of the harmless error rule where the evidence of guilt is so overwhelming that the conviction would have resulted "beyond a reasonable doubt" anyway.

It may be remembered that in Chapman it was held that some federal constitutional error might be harmless error but only when the Court is "able to declare a belief that it was harmless beyond a reasonable doubt." In laying down such rule the Chapman Court specifically rejected the California "miscarriage of justice"

rule saying California courts had neutralized the rule "by emphasis, and perhaps overemphasis, upon the court's view of 'overwhelming evidence.'" The Court, instead, adopted the rule upon Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, where the Court said: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

If Harrington does not depart from Chapman or dilute it by inference as claimed by its majority, those courts who cite Harrington and seek to avoid reversible constitutional error by emphasis and perhaps overemphasis of their own view of overwhelming evidence may well be neutralizing the Harrington doctrine just as the California courts neutralized the "miscarriage of justice" rule.

Only recently in Johnson v. State, 9 Md. App. 166, 263 A.2d 232 (3/17/70), the Maryland Court of Special Appeals, without discussing the harmless error angle, held that the issue of a testifying defendant's credibility is material to his guilt or innocence and interpreted Burgett to bar admission of convictions secured without the assistance of counsel or a valid waiver of that right.

Johnson's objection was based on Burgett, though he did not specifically assert, as in the case at bar, that he was not afforded counsel. The Maryland court felt he thus raised a question that the trial court should have investigated further without summarily overruling such objection. Therefore, without reversing, or modifying the judgment, the case was remanded to the trial court for a hearing on the admission of the prior convictions.

The Maryland appellate court wrote:

"We hold that the Burgett principle serves to exclude evidence of a prior conviction offered for the purpose of impeaching the credibility of an accused testifying on his own behalf when it is established that such conviction was obtained absent representation by counsel or a valid waiver thereof.[7] * * * We do not think that this language (from Burgett and quoted in this opinion) can be interpreted as limiting its application to recidivist, or habitual offender or subsequent offender statutes authorizing enhanced punishment upon conviction of a current substantive offense. And we cannot say that evidence of a prior conviction to impeach the credibility of an accused testifying in his own behalf does not support guilt of the offense for which he is on trial; the question of his credibility is material to his guilt or innocence. * * *"

In light of the above discussion I would conclude that the rationale of Burgett bars the use of a prior felony conviction for impeachment of an accused testifying in his own behalf absent a clear showing that the conviction was not obtained in violation of

---

7. The Maryland court further stated:
"We hold that it is encumbent upon the defendant, when his objection to evidence of a prior conviction is on the ground that the conviction was constitutionally void to state his reasons to the court to enable it properly to determine the issue. This may be done by him out of the presence of the jury. The court shall then conduct a hearing out of the presence of the jury. At the hearing the State shall first have the burden of producing evidence of a prior conviction, unless admitted by the defendant, sufficient to justify a finding by the court that the defendant has suffered such previous conviction. Code, Art. 35, § 10 provides one method to accomplish this. When this showing has been made the defendant must produce evidence tending to establish that his constitutional right to counsel was infringed in the prior proceeding at issue. Having already elected to testify, he may assert under oath that he was without counsel in the prior proceeding and did not waive the right to counsel. He is, of course, subject to cross-examination by the State on the point. The burden is then upon the State to prove by clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding. We observe that if proof of the prior conviction is by a certificate, under the seal of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what crime, or by any other admissible record of the proceedings establishing the conviction, and such evidence does not affirmatively show that the defendant was represented by counsel, the conviction is presumptively void. Presuming waiver of counsel from a silent record is impermissible. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. The State then must rebut the presumption, if it can. * * * The court shall make a finding on the basis of the evidence thus produced and shall exclude from the trial on the merits any prior conviction found to be constitutionally invalid. Any prior conviction found to be constitutionally valid shall be admitted in evidence as going to credibility if relevant to the issue. As the admission of evidence vel non is a matter exclusively for the court, in a jury trial, no evidence with respect to the constitutionality of the conviction shall be presented to the jury. * * *"

the rule announced in Gideon. The issue of credibility is material to the determination of guilt or innocence. The presumptively void prior conviction when offered for impeachment was, in effect, used to aid the establishment of guilt. In the State's argument at the guilt stage of the proceedings the jury was told not to believe the appellant's testimony pointing specifically to the 1957 Louisiana conviction and told to ask the bailiff for State's Exhibit #3 for use in their deliberations. The court in the case at bar erred in admitting into evidence for the purpose of impeachment of the appellant the prior felony conviction from Louisiana. The State should have been put on notice when the record evidence of the prior pre-Gideon conviction requested and received was silent to counsel, and the appellant contended he was at such time without counsel.

While some confusion is engendered by reference to a juvenile proceedings, it is clearly indicated from the dates, etc., in the record that the appellant and the State were referring to the same Louisiana proceedings. Appellant's counsel now acknowledges that his assumption was based on erroneous information. See footnote #1. Even, however, if there were two separate proceedings, this would not change the result. The State has no right to use the felony conviction absent a clear showing that such conviction was not obtained in violation of Gideon.

The question remaining is whether such constitutional error was harmless error.

There was a sharp conflict between the testimony of the prosecutrix and the appellant as to whether the act of intercourse was with or without her consent. The prosecutrix's version is well described in the majority's opinion and need not be repeated here. The appellant, who admitted making the initial advances, related the act occurred not only with her consent but with full cooperation and he detailed some of the acts of cooperation which are also mentioned in the State's brief.

The prosecutrix had met the appellant at Bodittle's Night Club which place she and her roommate frequented and where, on occasion, they would dance with some of the men there. When the prosecutrix first reported the alleged offense to the police she told them only that an "aggravated assault" had been committed upon her.

Dr. Byrd, a State's witness who subsequently examined her, found some small bruises without swelling and superficial scratches on her body. He found no trauma in the vaginal area and no indication of entry by force. He related that her vagina resembled that of a married person and that she had admitted she had had sexual intercourse three months before the alleged offense.

Dr. Seale Johnson, also a State's witness, testified that prior to the date of the alleged offense he had treated the prosecutrix for a sore throat and bronchitis and still later for vaginitis and bilateral bartholim cystitis which could have been caused by sexual intercourse.

He related that none of the medicines he had prescribed for her would have caused her to be "groggy or dizzy" as she claimed to have been from such medication at the time of the alleged offense unless she "overdosed it."

The prosecutrix admitted that although a woman and her son lived across the hall from her apartment she did not attempt to scream at any time except when she told the appellant to leave shortly after his arrival.

While on cross-examination at the guilt stage of the trial the appellant acknowledged two prior misdemeanor convictions for offenses involving moral turpitude, I cannot agree, in light of the facts revealed and the sharp conflict therein that the admission of the constitutionally infirm prior conviction to impeach the appellant's credibility was harmless error under the standards of Chapman and Harrington.

And this is particularly true when the question is considered with the gloss of the fact that in absence of a showing of Louisiana law, it is presumed to be the same as Texas and the prior conviction was for a felony based upon an information which is not permissible in this state.

Even if it could be argued that the error was harmless at the guilt stage of the proceedings, reversal, in my opinion, should result because of the introduction of the infirm prior at the penalty stage of the trial as a part of appellant's prior criminal record available for the jury's use in assessing punishment.[8]

The alleged offense in the case at bar occurred on April 4, 1968, and appellant's trial commenced on March 18, 1969, well after the decision in Burgett (November 13, 1967). The question here presented is on direct appeal. I would expressly reserve the question of the retroactivity of the Burgett rationale insofar as it prohibits impeachment by the use of a prior felony conviction in absence of a clear showing that the conviction was not obtained in violation of Gideon.[9]

The importance of this appeal to the jurisprudence of this state lies not in the fact that it is affirmed or reversed but in the manner in which the issue so clearly raised is disposed of by this Court. The issue will not disappear because it is ignored. It is being raised daily in the trial courts of this state and in courts throughout this nation. This is the only appellate court in this state for criminal appeals and it is not unusual that the trial courts, prosecutors and defense counsel look to this Court for some guidelines in handling their day to day problems. It is incumbent upon this Court to furnish those guidelines.[10] The majority holds that "under the facts

8. In Brumfield v. State, Tex.Cr.App., 445 S.W.2d 732, 740, it was said:

"Further, where the defendant has taken the stand at the guilt stage of the proceedings and any part of his prior criminal record is properly used for impeachment or is otherwise legally introduced, the same need not be re-introduced at the hearing on punishment. Such evidence may be properly considered by the judge or jury assessing the penalty."

The question may well be raised that if the introduction of a constitutionally infirm prior conviction for impeachment at the guilt stage of the trial is harmless error can an instruction to disregard at the penalty stage be sufficient in light of Burgett's holding that the instructions there were not adequate, even when as here the prior conviction is limited by the court's charge to impeachment purposes at the guilt or first stage of the bifurcated trial? Note that the majority points out the appellant failed to ask to have exhibit as to the prior conviction withdrawn from the jury at the penalty stage. Would such an instruction have served any purpose in light of Burgett where there were such instructions?

9. For a discussion of retroactivity, see In Re Dabney, supra; 20 Baylor Law Review 473.

10. If a defendant has been previously convicted in violation of the rule announced in Gideon v. Wainwright, supra, and is subsequently tried for another offense, how does he, if he desires to testify at such trial, avoid impeachment by use of such void conviction and thus avoid suffering anew from his Sixth Amendment right to counsel? Must he give up the right to testify in his own behalf to prevent impeachment? I think not. Cf. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Brumfield v. State, Tex.Cr.App., 445 S.W.2d 732. If he takes the stand in his own behalf he is placed on the horns of a dilemma. If on cross-examination he is asked if he has been previously convicted of a felony and he answers "yes," then he is left to explain the lack of counsel, etc., and the matter is then squarely before the jury. If he answers "no" on the ground that his prior felony conviction was a nullity due to the deprivation of the constitutional right to counsel then is the State permitted to introduce record evidence of his previous conviction, silent as to counsel, in order to impeach him? If the State is so authorized, then the presumptively void prior conviction is before the jury and it is doubtful that a jury instruction to disregard would be regarded

of this case" Burgett does not apply. The reader is left to puzzle whether the majority means that Burgett does not extend to the impeachment of an accused testifying in his own behalf, or that Burgett does so apply but in this particular case the error was harmless constitutional error. If the majority had clearly delineated their position it would be more tenable. The majority has simply written around the issue presented.

For the reasons stated, I dissent.

as sufficient to prevent harmful error. See Burgett v. Texas, supra.

Certainly where the defendant, before he testifies, calls the trial court's attention to the fact that a prior conviction was obtained in violation of Gideon and the State is in possession of record evidence of such conviction which is silent as to counsel, the court should make further inquiry and not permit impeachment by use of such prior in absence of a showing that the defendant had counsel at the time or had affirmatively waived the same.

Suppose an accused's prior felony conviction had been reversed on appeal and he had never been tried. May the State ask him on cross-examination if he has ever been convicted of a felony and upon his negative answer be permitted to impeach him knowing the circumstances surrounding the conviction? I think not. May a successfully completed probation be utilized in the same manner? I think not. If the prior conviction is clearly too remote and not available for impeachment, may the State nevertheless ask the accused if he has ever been convicted of a felony and be allowed to then impeach him if he gives a negative answer for being a liar or leave him to explain if he answers affirmatively? If such procedure is permissible, then the prohibition against the use of remote convictions is effectively destroyed.