[71 C.2d 1; 76 Cal.Rptr. 636, 452 P.2d 924]

[Crim. No. 13003. In Bank. Apr. 23, 1969.]

In re ISRAEL DABNEY on Habeas Corpus.

C. William Simmons, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Israel Dabney petitions for a writ of habeas corpus claiming that both his conviction and his augmented penalty as a second narcotics offender were obtained by means of a constitutionally invalid prior conviction. At petitioner's trial the People introduced before the jury an unconstitutionally obtained prior conviction to prove his guilt by impeaching petitioner's testimony and by demonstrating his knowledge that a packet alleged to be in his possession contained heroin. We conclude that the admission of that prior conviction was erroneous in the light of *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], and

*Burgett* v. *Texas* (1967) 389 U.S. 109 [19 L.Ed.2d 319, 88 S.Ct. 258], and that the error was harmful under the standards of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. We further conclude that although the prohibition against the introduction of such invalid priors should not be given unlimited retrospective application, petitioner's case lies within the scope of the limited retroactivity appropriate for this type of constitutional error. Since the prior conviction was constitutionally invalid, petitioner is entitled to a new trial and, if convicted, to the sentence of a first, rather than a second narcotics offender.

1. *The Facts.*

Since *People* v. *Dabney* (1967) 250 Cal.App.2d 933 [59 Cal. Rptr. 243], details the early history of this case, it needs only brief summary here. On January 8, 1965, petitioner was arrested and charged with possession of heroin in violation of Health and Safety Code section 11500. By amendment to the original information the People charged petitioner with a prior Illinois conviction in 1956 for possession of heroin. Although petitioner at first denied the prior, he subsequently admitted it when rearraigned at the time of his trial September 2, 1965. During the trial itself petitioner testified on his own behalf, and, in response to a question asked for impeachment purposes by the People, admitted his prior conviction in the presence of the jury. Petitioner was convicted of possession of heroin in violation of section 11500 and subjected to the heightened penalty proscribed for persons with a prior narcotics conviction.

After the trial and during the pendency of petitioner's appeal to the Court of Appeal, we filed our decision in *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]. In that case we held (a) that the constitutional validity of a prior conviction could be challenged if the People sought to make use of it at a subsequent criminal proceeding, and (b) that if such a prior conviction served as the basis of augmented punishment, the right to level such a collateral attack on that prior conviction would enjoy complete retroactivity. We expressed no opinion as to the retroactivity of the right to challenge a prior conviction if it had been used as evidence of guilt. Although petitioner had earlier admitted the prior Illinois conviction, he challenged its validity on appeal, contending that in the Illinois proceeding, in violation of *Gideon* v.

*Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], he had neither been offered nor waived counsel.

Because the record contained no evidence as to the constitutionality of the prior conviction, the Court of Appeal declined to consider the question and affirmed petitioner's conviction and sentence, but it explicitly did so without prejudice to petitioner's right to challenge the prior conviction by way of a collateral attack. (*People* v. *Dabney, supra,* 250 Cal.App.2d 933, 950.) We denied a petition for hearing on July 12, 1967. (250 Cal.App.2d at p. 950.) Before the expiration of the period for petitioning the Supreme Court for certiorari, we filed our decision in *People* v. *Coffey, supra,* 67 Cal.2d 204. In *Coffey* we allowed an attack on a conviction obtained by means of a constitutionally invalid prior introduced to prove guilt; that case, however, came to us on appeal, and we expressed no opinion as to whether such an attack could be made on a judgment already final.

On August 30, 1967, petitioner filed with the Court of Appeal a "Petition for Writ of Error Coram Nobis/Motion to Vacate" challenging both his conviction and sentence because of the use of the Illinois prior conviction. The Court of Appeal elected to treat the petition as an application for a writ of habeas corpus. Because the petition raised factual issues, the Court of Appeal referred the issue of their resolution to the judge who had presided over petitioner's California trial. The judge, as referee, concluded that petitioner had not been advised of his right to counsel in the Illinois proceeding, and that he had not intelligently waived that right. The Attorney General acknowledged that petitioner had not in fact been represented by an attorney at the Illinois trial.

Since the testimony of both petitioner and his wife supported the referee's findings, we must conclude, as did the Court of Appeal, that petitioner's Illinois conviction violated the holding of *Gideon* v. *Wainwright, supra,* 372 U.S. 335. Accordingly, petitioner was entitled to be considered for probation and, if probation were denied, to sentencing as an offender without a previous narcotics conviction. (*In re Woods, supra,* 64 Cal.2d 3.)

The Court of Appeal rejected petitioner's challenge to the validity of the California conviction itself. Although concluding that such an attack could be made only on convictions which became final after July 28, 1967, the date of the filing of *Coffey,* that court did recognize that petitioner's conviction

had not become final until some 10 weeks after *Coffey,* when the period for petitioning for certiorari expired. The Court of Appeal further reasoned, however, that the California conviction nonetheless could stand because the admission of the Illinois prior conviction for impeachment purposes did not constitute prejudicial error under *Chapman* v. *California, supra,* 386 U.S. 18. Petitioner's petition for a hearing by this court followed.

### 2. *Harmfulness of the Error.*

We conclude that the admission before the jury of petitioner's prior Illinois conviction was prejudicial under *Chapman* v. *California, supra,* 386 U.S. 18, and that the instant California conviction is therefore invalid.

We have repeatedly held that prior convictions obtained in violation of *Gideon* v. *Wainwright, supra,* 372 U.S. 335, cannot be used for impeachment or any other purposes. (*In re Woods, supra,* 64 Cal.2d 3; *In re Luce* (1966) 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker* (1966) 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921]; *People* v. *Coffey, supra,* 67 Cal.2d 204; *In re Caffey* (1968) 68 Cal.2d 762 [69 Cal.Rptr. 93, 441 P.2d 933].) An accused cannot be forced to suffer anew from the earlier deprivation of his Sixth Amendment right. (*Burgett* v. *Texas, supra,* 389 U.S. 109, 115 [19 L.Ed.2d 319, 325].)

The People contend that they have shown beyond a reasonable doubt that the use of the invalid prior conviction "did not contribute to the verdict obtained," as required by *Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710]. Subsequent to the decision in *Chapman* we concluded that the use of an invalid prior conviction to impeach an accused testifying in his own defense was not prejudicial per se, and therefore did not necessarily effect reversible error. (*People* v. *Coffey, supra,* 67 Cal.2d 204, 219.) We found no reasonable possibility that such erroneous admission contributed to the verdict obtained if the accused's testimony were contradicted by "convincing and extensive evidence" introduced by the prosecution. (*People* v. *Coffey, supra,* 67 Cal.2d 204, 224, fn. 24.)

Four months after *Coffey,* the United States Supreme Court decided *Burgett* v. *Texas, supra,* 389 U.S. 109. In *Burgett* the trial court tentatively admitted four invalid prior felony convictions, three for forgery and one for buglary, against an accused charged with assault with intent to commit murder. The prosecution had introduced the convictions solely for sen-

tencing purposes, not, as here, to impeach the accused or to show knowledge on his part. At the end of the testimony the Texas trial judge instructed the jury not to consider the alleged prior offenses for any purpose whatever. Convicted of assault as charged, the accused was sentenced as a first offender. The Texas Court of Criminal Appeals affirmed the conviction, but the Supreme Court reversed.

The Supreme Court had earlier recognized in *Spencer* v. *Texas* (1967) 385 U.S. 554, 560, 561, 562, 564 [17 L.Ed.2d 606, 611, 612, 613, 614, 87 S.Ct. 648], the danger of prejudice resulting from the introduction of valid prior convictions. That court recognized that jurors ordinarily will more readily find an accused guilty if they believe he has suffered a previous conviction. But the court thought that the state's interest in the admission of such evidence for a number of legitimate purposes outweighed any such danger. In *Burgett,* however, the invalidity of the prior convictions destroyed any viable state interest in the introduction of those priors. Accordingly, the court reasoned: "The admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon* v. *Wainwright* is inherently prejudicial," and added: "[W]e are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' within the meaning of *Chapman* v. *California* . . . ." (Fn. omitted.) (*Burgett* v. *Texas, supra,* 389 U.S. 109, 115 [19 L.Ed.2d 319, 325].) Chief Justice Warren, in a concurring opinion, supported the decision as "a needed limitation on the *Spencer* rule." (*Burgett* v. *Texas, supra,* 389 U.S. 109, 120 [19 L.Ed.2d 319, 327].)

We do not believe that the Supreme Court's description of the error as inherently prejudicial means that it can never be found "harmless beyond a reasonable doubt" within the meaning of *Chapman,* for the court apparently applied the *Chapman* test in *Burgett.* It did not state that because the error was inherently prejudicial it could never be deemed harmless, but instead stated that the error was inherently prejudicial and that "we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt'. . . ." It did not foreclose the possibility that on another record presenting different facts it could conclude that such error was harmless.

By describing the error as inherently prejudicial, the court may have meant only that such error is always to some extent harmful by reason of its essential character and is therefore

different from error in the admission of other unconstitutionally obtained evidence that is not always harmful, such as, for example, innocent responses to an interrogation not preceded by required *Miranda* warnings. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) In this sense of "inherently," used as descriptive of the essential character of the error, commenting on a defendant's failure to testify is also inherently prejudicial. (See *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Such error, however, may be found harmless under *Chapman*. ■ Accordingly, we adhere to our holding in *People* v. *Coffey, supra,* that the introduction into evidence of an unconstitutional prior conviction is not prejudicial per se and therefore does not necessarily effect reversible error. Both the court's language in *Burgett* and the background provided by *Spencer* make clear, however, that only the most compelling showing can justify finding such error harmless beyond a reasonable doubt.

■ The People have made no such showing in the instant case. At the trial the police testified that after they took petitioner into custody he attempted to throw away a packet later found to contain heroin. Petitioner insisted that he had never possessed or tried to dispose of the packet in question. The accounts given by the three arresting officers as to the events surrounding petitioner's arrest disclosed a number of inconsistencies. In the light of this testimony the use of the prior to impeach petitioner may well have played a crucial role in the jury's decision to believe the police rather than petitioner. In addition the prior served as weighty evidence that petitioner knew what the packet in question contained. Finally, the danger of the *Spencer* type of prejudice is even greater than in *Burgett,* for here both the prior and the alleged crime involved the same type of offense—possession of heroin—and the offense itself was one which a jury would be particularly likely to believe would be repeated. (See *People* v. *Sansome* (1890) 84 Cal. 449, 451-452 [24 P. 143].) Under these circumstances the People have not shown beyond a reasonable doubt that the invalid prior did not contribute to the verdict obtained. (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710].)

*3. Retroactivity.*

We must finally decide whether *In re Woods, supra,* 64 Cal.2d 3, as applied in *People* v. *Coffey, supra,* 67 Cal.2d 204, should receive full retrospective application. We conclude that

the *Woods-Coffey* rule should apply only to decisions which became final after January 26, 1966, the date on which we filed our decision in *Woods.*

The Constitution neither requires nor prohibits rigid retroactive application of all new developments in constitutional law. (*Linkletter* v. *Walker* (1965) 381 U.S. 618, 629 [14 L.Ed.2d 601, 608, 85 S.Ct. 1731].) In deciding whether to apply the *Woods-Coffey* rule retroactively we must consider the three criteria most recently reiterated in *Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967] : ''(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.''

*(a) Purpose of the Woods-Coffey Rule*

One purpose of the *Woods-Coffey* rule is to prevent erosion of *Gideon* itself by protecting the accused from suffering anew from the initial deprivation of his Sixth Amendment right. (*Burgett* v. *Texas, supra,* 389 U.S. 109, 115, 116 [19 L.Ed.2d 319, 325, 326].) But the exclusion of invalid priors is also aimed at protecting the fairness of the second trial. The requirement of counsel established by *Gideon* v. *Wainwright, supra,* 372 U.S. 335, receives full retroactive effect because ''[t]he basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial . . . is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent.'' (*Tehan* v. *Shott* (1966) 382 U.S. 406, 416 [15 L.Ed.2d 453, 460, 86 S.Ct. 459].) To the extent that such an infected prior conviction contributes to a later conviction, the danger threatens that the second proceeding as well as the first, on which it relied, will produce the conviction of an innocent man. Our inquiry does not stop here, however; we must also weigh the application to the present proceeding of the two other factors mentioned in *Stovall.*

*(b) Reliance on Pre-Woods Standards*

A limited retroactivity approach in the instant case is supported by those other *Stovall* considerations. Before *Woods,* prosecutors, in order to impeach defendants testifying on their own behalf, often introduced at trial prior convictions, some of which were invalid under *Gideon.* In reliance

on our position before *Woods,* prosecutors, as well as defendants and courts, did not attempt to ascertain the constitutional validity of those priors. (Compare *Tehan* v. *Shott, supra,* 382 U.S. 406, 410-413 [15 L.Ed.2d 453, 456-458]; *Johnson* v. *New Jersey* (1966) 384 U.S. 719, 731 [16 L.Ed.2d 882, 891, 86 S.Ct. 1772].) Unlimited retroactivity here would compel the courts to hold hearings as to the validity of priors in many cases not covered by the *Woods* retroactivity with regard to priors used for sentencing purposes. (Compare *Linkletter* v. *Walker, supra,* 381 U.S. 618, 637 [14 L.Ed.2d 601, 613].)

*(c) Administration of Justice*

Most significantly, unlimited retroactivity in the instant case would impose grave burdens on the administration of criminal justice. It would result in ''the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from unlimited retroactivity; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws.'' *(In re Lopez* (1965) 62 Cal.2d 368, 381 [42 Cal.Rptr. 188, 398 P.2d 380]; see *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 731 [16 L.Ed.2d 882, 891]; *Tehan* v. *Shott, supra,* 382 U.S. 406, 419 [15 L.Ed.2d 453, 461-462].) Although most California prior convictions probably would remain valid, since this state has long required counsel in felony prosecutions, a very significant fraction of the prior convictions introduced in California prosecutions were obtained in other jurisdictions which did not so anticipate *Gideon.*

Accordingly, we restrict retroactivity to those cases which became final after our decision in *Woods.* Such limited retroactivity will involve only a small number of cases; in those cases which must be retried the evidence will still be fresh. (Compare *Tehan* v. *Shott, supra,* 382 U.S. 406, 409, fn. 3 [15 L.Ed.2d 453, 455-456]; *Linkletter* v. *Walker, supra,* 381 U.S. 618, 639 [14 L.Ed.2d 601, 614]; *In re Gaines* (1965) 63 Cal.2d 234 [45 Cal.Rptr. 865, 404 P.2d 473]; *In re Lopez, supra,* 62 Cal.2d 368.) Although in *Stovall* v. *Denno, supra,* 388 U.S. 293, and *Johnson* v. *New Jersey, supra,* 384 U.S. 719, the Supreme Court applied a more restrictive form of retroac-

tivity, those cases may be distinguished from the instant issue. They dealt, not with the establishment of a new guarantee or with a new limitation on the impact of a prior constitutional violation, but with prophylactic rules to protect suspects from possible violations of already recognized rights.

### (d) Applicability of the Woods-Coffey Rule to Petitioner's Case

Having concluded that the limited *Linkletter* type of retroactivity is appropriate, we must determine the date after which decisions must have become final in order to fall under the *Woods-Coffey* rule. We fix that date as January 26, 1966, the date on which *Woods* was filed, rather than the date of our decision in *Coffey* or of the Supreme Court's decision in *Gideon*. The primary consideration in choosing among these three dates is the point in time at which it became unreasonable for prosecutors or courts to assume that invalid prior convictions could be used for impeachment, sentencing, or other purposes. Prior to *Woods* such an assumption was reasonable, since ''we limited our examination of foreign convictions to consider whether the foreign crime fit one of the categories established by Penal Code section 644 for the purpose of determining criminality . . . and to determine whether the rendering court had jurisdiction to try the defendant.'' (*In re Caffey, supra,* 68 Cal.2d 762, 773 fn. 9.) On the other hand, although *Woods* dealt with the use of an invalid prior for sentencing purposes, the extension of its logic to priors introduced to show guilt was so clearly foreshadowed that any reliance by prosecutors or courts on a contrary view was without justification. Thus it was *Woods* which made a ''clear break with the past'' and which effected the crucial change in the law. (*Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030].) *Coffey* ''merely confirmed the demise of obsolete decisions'' regarding the use of unconstitutionally obtained prior convictions for any purposes in criminal proceedings. (*Desist* v. *United States, supra,* 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030].)

 Petitioner's conviction only became final for retroactivity purposes on October 10, 1967, when the period during which he might have applied for certiorari ended. (See *In re Spencer* (1965) 63 Cal.2d 400, 405 [46 Cal.Rptr. 753, 406 P.2d 33].) For this reason his case is governed by *Woods* and *Coffey*. Because, on the other hand, petitioner's trial occurred before *Woods,* his failure to deny his prior convic-

tion at or before trial cannot constitute a waiver of his right to make such an objection. (*In re Caffey, supra,* 68 Cal.2d 762, 773.)

The writ is granted and petitioner is remanded to the Superior Court of the City and County of San Francisco for proceedings consistent with this opinion.

Traynor, C. J., McComb, J., Mosk, J., Burke, J., and Schauer, J.,* concurred.

PETERS, J.—I agree that the writ of habeas corpus should issue, but I believe that most of the discussion of retroactivity is unnecessary, confusing and dangerous, and constitutes the sheerest dicta. All that was necessary was to decide that *In re Woods,* 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913], was applicable to pending appeals. It was entirely unnecessary to try to decide for future cases that retroactivity did not go beyond January 26, 1966, when *Woods* was filed.

The doctrine of limited retroactivity, while it undoubtedly applies in some cases even to constitutional rights, is highly controversial and involves a very sensitive field of judicial power. It should not be discussed except where absolutely necessary. It is not necessary to discuss it here. The discussion of it, in my opinion, should not appear in the opinion.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.