[Crim. No. 4327. Fourth Dist., Div. Two. Feb. 11, 1971.]

In re GEORGE MARTIN BARTLETT on Habeas Corpus.

## COUNSEL

Rufus W. Johnson, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Laurence M. Sarnoff and Russell Iungerich, Deputy Attorneys General, for Respondent.

## OPINION

GARDNER, P. J.—The petitioner is presently serving a sentence for violation of section 11500 of the Health and Safety Code, with a prior narcotics conviction (violation of § 11721 of the Health & Saf. Code, a misdemeanor).[1] He was sentenced on the instant charge on August 11, 1958.[2] The judgment in the prior misdemeanor was pronounced January 15, 1957, and the records pertaining to this conviction have been destroyed.

Petitioner has served in excess of 10 years, the maximum sentence which could be imposed, absent the prior misdemeanor conviction. He seeks release by writ of habeas corpus on two grounds:

### I.

PETITIONER'S PRESENT INCARCERATION IS BASED UPON A SENTENCE AGGRAVATED AS A RESULT OF HIS PRIOR PLEA OF GUILTY TO THAT PORTION OF SECTION 11721 SUBSEQUENTLY HELD UNCONSTITUTIONAL IN *ROBINSON* v. *CALIFORNIA,* 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417].

Initially, petitioner concedes that only the addiction portion of section 11721 was declared unconstitutional, but contends that the offense to which he pleaded guilty specifically alleged addiction only and not use.

It has previously been determined that a writ of habeas corpus will not issue if the conviction attacked rests upon a sufficient ground other than

---

[1]At the time of petitioner's conviction in 1958, Health and Safety Code section 11500, read as follows: "Except as otherwise provided in this division, no person shall possess, transport, import into this State, sell, furnish, administer, or give away, or offer to transport, import into this State, sell, furnish, administer, or give away, or attempt to import into this State or transport a narcotic except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State."

Former Health and Safety Code section 11712, in effect at the time of petitioner's 1958 conviction read as follows: "Any person convicted under this division for having in possession any narcotic, or of violating the provisions of Section 11530 or 11557 shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years.

"If such a person has been previously convicted of any offense described in this division . . . the previous conviction shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or is admitted by the defendant, he shall be imprisoned in the state prison for not less than two years nor more than 20 years."

[2]He may thus not avail himself of the benefits of *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], since that case invites writs of habeas corpus in augmented sentence situations such as the instant case only for those prisoners suffering sentences imposed after the effective date of Health and Safety Code section 11718 (September 18, 1959).

the invalid portion of the statute involved. (*In re Perez,* 65 Cal.2d 224, 231 [53 Cal.Rptr. 414, 418 P.2d 6]; *Erlich* v. *Municipal Court,* 55 Cal.2d 553, 559 [11 Cal.Rptr. 758, 360 P.2d 334]; *In re Bell,* 19 Cal.2d 488, 498-499 [122 P.2d 22].) The case of *In re Becerra,* 218 Cal.App.2d 746 [32 Cal.Rptr. 910], held that section 11721 was severable and that when the defendant has pleaded guilty to a charge of violation of section 11721 in the conjunctive, i.e., where the complaint charges both the use of narcotics and addiction that such misdemeanor conviction may be properly used in aggravating the sentence imposed under section 11500. (See also *In re Smith,* 2 Cal.3d 508 [86 Cal.Rptr. 4, 467 P.2d 836]; *In re Carlson,* 64 Cal.2d 70 [48 Cal.Rptr. 875, 410 P.2d 379].)

In this case, unlike *Becerra,* the records of the Fresno Municipal Court where the misdemeanor conviction took place have now been destroyed. Therefore, the case is very similar to *In re Carlson, supra,* in which the identical issue was presented with substantially the same factual situation, i.e., the destruction of the misdemeanor complaint. In *Carlson,* the writ was denied on the basis of declarations of two deputy city attorneys that the form in use at the time of the plea was in the conjunctive. As opposed to that was the declaration of the petitioner that he pleaded guilty only to the charge of addiction. He further alleged that if the arrest report were available, it would show that he was arrested by reason of needle marks and for no other cause. However, the court secured a copy of the arrest report and held that this report refuted that statement. The report showed that petitioner and four other men were apprehended in the act of administering heroin to themselves, that petitioner at the time of the arrest had blood running from one of the several needle marks on his arms and that petitioner then and there stated that he had only taken a few drops of heroin out of the eye dropper when officers arrived. The court stated: "While the arrest report clearly does not constitute persuasive evidence as to the content of the complaint by which petitioner was charged, it does show that, contrary to petitioner's declaration, no support for his position is to be found therein." (*In re Carlson, supra,* 64 Cal.2d 70, 75.)

The Supreme Court further stated: "The necessity that a resolution of properly presented constitutional questions be made in spite of difficulties imposed by the passage of time requires a present determination on the basis of available evidence. (Citations.)" (*In re Carlson, supra,* at p. 75.) Based upon the above evidence and faced with the necessity of making a present determination on the available evidence, the court in *Carlson* held that the petitioner had failed to present evidence sufficient to sustain his burden of proof and, therefore, denied the petition.

In this case, the docket is of no assistance since it merely shows the

charge of violation of section 11721 of the Health and Safety Code. However, the arrest report states as follows: "After being sentenced to jail on vagrancy charge this man was found to have fresh needle marks on his arm, and was examined by Agent Stemm and then admitted he has been taking shots of heroin, the last two being yesterday. Complaint issued by DA and warrant obtained and served on subject in jail." Although not persuasive, a reasonable inference can be drawn from this report that petitioner was charged with either use or use and addiction conjunctively.

More persuasive is the district attorney's copy of the complaint filed in 1957. This copy of the complaint is consistent in time, name and charge with the docket mentioned above and has a proper foundation as to authentication. The allegation in the complaint is that "The said defendant, on or about the 11th day of January 1957, at and in the said County of Fresno, State of California, wilfully and unlawfully *used* and is addicted to the use of narcotics, to wit, HEROIN." (Italics added.)

A presumption of regularity attaches to a judgment collaterally attacked. (*Johnson* v. *Zerbst*, 304 U.S. 458, 468 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Smith, supra,* 2 Cal.3d 508, 510; *In re Carlson, supra,* 64 Cal.2d 70, 75; *In re Bell, supra,* 19 Cal.2d 488, 500.) This presumption places the burden upon a petitioner to prove that his conviction was based on the unconstitutional portion of the statute under which he was convicted.

Petitioner has presented no evidence sufficient to overcome the presumption of regularity which attached to the judgment or the showing offered by the Attorney General that he pleaded guilty to both the use of and addiction to narcotics.

## II.

THE PETITIONER'S 1957 MISDEMEANOR CONVICTION IS INVALID BECAUSE THE RECORD DOES NOT DISCLOSE A PERSONAL WAIVER OF THE RIGHT TO COUNSEL, THE RIGHT TO A JURY TRIAL, THE RIGHT TO CONFRONTATION AND THE RIGHT AGAINST INCRIMINATION.

Initially, petitioner seeks retroactive application of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. However, *In re Tahl,* 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449], held that *Boykin* was to be given prospective application only. Prior to *Boykin,* ". . . it was not necessary that acceptance of a guilty plea be preceded by a specific waiver of the right to a jury trial, or any other right (except the right to counsel, where none was present)." (*In re Tahl, supra,* 1 Cal.3d 122, 129, fn. 4.)

Therefore, we pass to petitioner's final contention that his 1957 conviction is constitutionally invalid in that he was neither afforded the services of counsel nor did he waive the right thereto.

In 1957, Penal Code, section 858, stated in pertinent part: "When the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings."

The docket states that the petitioner was informed of his legal rights. Petitioner does not contend that he was not advised of his right to counsel— only that the right to counsel was not waived. On the basis of this record, this court may safely assume that the petitioner was properly apprised of his right to counsel.

However, all parties concede that petitioner was not represented by counsel in the 1957 proceeding. The docket so indicates, petitioner so alleges, the Attorney General makes no contrary allegation.

Nevertheless, petitioner asserts that he did not make a knowing and intelligent waiver of his right to counsel. The Attorney General does not present any evidence to the contrary. The docket is silent on the subject. In the face of a silent record, we cannot assume a waiver.

"(1) '. . . "[C]ourts indulge every reasonable presumption against waiver" of fundamental rights.' (*Carnley* v. *Cochran,* 369 U.S. 506, 514 [8 L.Ed.2d 70, 82 S.Ct. 884]; quoting from *Johnson* v. *Zerbst,* 304 U.S. 458, 464-465 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; accord, *In re Johnson, supra,* 62 Cal.2d 325, 334.) (2) 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 516; accord, *In re Johnson, supra,* 62 Cal.2d 325, 334.)" (*In re Woods,* 64 Cal.2d 3, 7 [48 Cal.Rptr. 689, 409 P.2d 913].)

Therefore, we cannot find that the petitioner made a knowing and intelligent waiver of his right to counsel at the time of his 1957 misdemeanor conviction. However, the Attorney General presents three theories under which this lack of an intelligent waiver may not inure to the benefit of the petitioner.

## A.

### The *WOODS-COFFEY* Rule.

As his first theory, the Attorney General contends that:

(1) *In re Woods, supra,* 64 Cal.2d 3, held that a prior conviction, constitutionally invalid under *Gideon,* which is used for sentencing purposes in a subsequent conviction is subject to collateral attack.

(2) *People* v. *Coffey,* 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], held that a prior conviction, constitutionally invalid under *Gideon,* which is used for impeachment purposes in a subsequent trial is subject to direct attack.

(3) *In re Dabney,* 71 Cal.2d 1 [76 Cal.Rptr. 636, 452 P.2d 924], in discussing both *Woods* and *Coffey* promulgated the *Woods-Coffey* rule re prior convictions and held that this rule was subject to limited retroactivity and selected the date of January 26, 1966 (the date of *Woods*) as the date after which decisions must have become final in order to be subject to collateral attack.

(4) Therefore, since the instant case is a collateral attack upon a prior conviction used in a trial held prior to January 26, 1966, it must fail.

We cannot agree with the Attorney General's interpretation of *Dabney* or the *Woods-Coffey* rule. However, we must admit that the use of the expression *"Woods-Coffey* rule" in *Dabney* is puzzling. To make our position clear, it is necessary that we return to *Woods* and trace its history through *Dabney.*

*Woods* approved a collateral attack on a prior conviction, constitutionally invalid under *Gideon,* which was used as the basis for augmenting the punishment prescribed for the subsequent offense. *Woods* held that the right to level such a collateral attack on such a prior conviction would enjoy complete retroactivity.

*Coffey,* a year later, was a direct appeal. It held that on direct appeal, a successful attack could be made on a prior conviction, constitutionally invalid under *Gideon,* where that prior conviction was used for the purposes of impeachment.

Then along came *Dabney.*

In referring to *Woods, Dabney* said (at p. 4): "In that case we held (a) that the constitutional validity of a prior conviction could be challenged if the People sought to make use of it at a subsequent criminal proceeding, and (b) that if such a prior conviction served as the basis

of augmented punishment, the right to level such a collateral attack on that prior conviction *would enjoy complete retroactivity.*" (Italics added.)

Then the court held that Mr. Dabney's prior conviction in 1956 violated *Gideon* and that Mr. Dabney was entitled to be treated as an offender without a prior conviction.

So far, so good; the court's meaning is understandable.

The petitioner in the instant case was sentenced in 1958. We have found that there was no showing of an intelligent waiver of counsel in his prior misdemeanor conviction of 1957. Ergo, it would appear beyond argument that he was entitled to be sentenced as an offender without a previous narcotic conviction. Also, it would appear beyond argument that he could attack this prior conviction collaterally as he has done in this case.

But at this point the plot thickens—and *Dabney* becomes something less than a monument of clarity.

Mr. Dabney's prior conviction was used not only for augmentation of sentence, it was used also for impeachment purposes. Thus in *Dabney* the Supreme Court was faced with the question of whether a collateral attack could be made upon the latter procedure.

In its discussion of this situation, the court coined the expression the *"Woods-Coffey"* rule, decreed a doctrine of limited retroactivity for that rule, and fixed the date of January 26, 1966, the date on which *Woods* was filed, as the date after which decisions must have become final in order to follow under the *Woods-Coffey* rule. It is the expression "The *Woods-Coffey* rule" which is causing confusion.

In the instant case, the Attorney General, in all good faith, contends that the *Woods-Coffey* rule precludes collateral attack on the use of invalid prior convictions for sentencing purposes prior to the date of January 26, 1966. As we have stated, we cannot agree with this contention. However, no less an authority than Witkin has come to the same conclusion as to the *Woods-Coffey* rule as has the Attorney General. In his California Criminal Procedure, 1969 Supplement, page 131, Mr. Witkin states: "The '*Woods-Coffey*' rule was first declared in the *Woods* case, *supra*. To apply it retroactively to all cases would place an impossible burden on the administration of justice. Accordingly it may be invoked to challenge the use of prior convictions—whether for impeachment, *sentencing* or other purposes—only in cases which became final after January 26, 1966, the date of the *Woods* decision." (Italics added.) However, our reading of *Dabney* leaves us with a somewhat confused (or bemused) conviction that *Woods* still stands for full retroactivity of the *Gideon* principle where a

prior conviction is used for sentencing purposes; but where the prior conviction is used for the purposes of impeachment (*Coffey*), retroactivity is limited to the date of January 26, 1966.

In *Dabney*, the Supreme Court said: "Having concluded that the limited *Linkletter* type of retroactivity is appropriate, we must determine the date after which decisions must have become final in order to fall under the *Woods-Coffey* rule. We fix that date as January 26, 1966, the date on which *Woods* was filed, rather than the date of our decision in *Coffey* or of the Supreme Court's decision in *Gideon*." (*In re Dabney, supra,* 71 Cal.2d 1, 11.) We interpret this to mean that the right to collaterally attack a prior conviction used for impeachment purposes is to be given limited retroactivity and in selecting a date for that limited retroactivity, the Supreme Court has selected the date of *Woods* because *Woods* "made a clear break with the past," i.e., approved a collateral attack on a prior conviction, constitutionally invalid under *Gideon,* which prior conviction is used in subsequent criminal proceedings. However, we must admit in all candor that the sentence in *Dabney* succeeding the sentence set forth above is baffling to the point of being bewildering and gives aid and comfort to the position of the Attorney General and Mr. Witkin. That sentence reads as follows: "The primary consideration in choosing among these three dates is the point in time at which it became unreasonable for prosecutors or courts to assume that invalid prior convictions could be used for impeachment, *sentencing,* or other purposes." (Italics added.) Nevertheless, we interpret *Dabney* as reaffirming the full retroactivity of *Woods,* i.e., where the prior conviction is used for sentencing purposes. Without repeating the discussion of the court in *Dabney* of the three principles enunciated in *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], we would merely state that that discussion confirms our opinion that the limited retroactivity ordained by the so-called *Woods-Coffey* rule was to apply only to the *Coffey* situation and not to the *Woods* situation.

If the *Woods-Coffey* rule has the meaning contended by the Attorney General, then the Supreme Court has treated that rule with lofty disdain in the case of *In re Huddleston,* 71 Cal.2d 1031 [80 Cal.Rptr. 595, 458 P.2d 507], filed five months and a thousand pages after *Dabney.* In *Huddleston,* there was a prior conviction used for sentencing purposes in a case in which the judgment became final in 1961. The Supreme Court in an opinion written by the author of *Dabney* apparently assumed full retroactivity of the *Woods'* principle but admittedly without any discussion of *Woods* whatsoever. (See also *In re Haro,* 71 Cal.2d 1021 [80 Cal.Rptr. 588, 458 P.2d 500]; and *People* v. *Tenorio, supra,* 3 Cal.3d 89, 95, fn. 2, which reads as follows: "Inasmuch as today's decision relates only to

sentencing and will not require any retrials, we have concluded that it should enjoy fully retroactive effect. (Cf. *In re Dabney,* 71 Cal.2d 1, 9-10 [76 Cal.Rptr. 636, 452 P.2d 924]).")

Thus, the *Woods-Coffey* rule represents a valiant effort to simplify. Unfortunately, that effort only resulted in obfuscation. *Requiescat in pace.*

## B.

### THE *SMILEY* CASE.

The Attorney General contends that the case of *In re Smiley,* 66 Cal.2d 606 at pp. 623-624 [58 Cal.Rptr. 579, 427 P.2d 179], holds that the rule of *In re Johnson, supra,* 62 Cal.2d 325, that a judgment is constitutionally defective unless the record affirmatively shows that the failure to provide the defendant with counsel at trial was the result of a knowing and intelligent waiver on his part is only applicable to post-*Johnson* judgments. We are unable to read any such limitation on *Johnson* in *Smiley.* It is true that the court in *Smiley* noted that in *Woods, supra,* they had not required that the records of prior convictions reflect "impossible prescience," and that as applied to the case the trial court did not need "impossible prescience" since *Smiley* was subsequent to *Johnson.* However, *Smiley* did not hold that *Johnson* was only applicable to post-*Johnson* judgments; it pointed out that in current cases there is no reason for an inadequate record.

## C.

FINALLY, THE ATTORNEY GENERAL URGES THAT THIS COURT DECLINE TO GRANT PETITIONER'S RELIEF ON THE GROUND THAT HE HAS BEEN UNDULY DILATORY IN PRESENTING HIS CLAIM OF ERROR.

It is true that the Supreme Court announced its opinion in *Woods* on January 26, 1966, and that petitioner did not file his petition in the court below or thereafter in this court until 1970. However, should we make the somewhat rash assumption that, as a layman imprisoned in a state penitentiary, he followed the Advance Sheets so closely that he became aware of *Woods* in 1966, it should be noted that it was not until August of 1968 that his continued detention became unlawful. Prior to that time the granting of his petition for a writ of habeas corpus would have resulted only in his case being remanded to the sentencing court for resentencing as a first rather than a second narcotics offender. This would have benefited him not at all as he still had two years to go on his ten-year maximum sentence as a first time narcotics offender.

The Supreme Court in *In re Huddleston, supra,* 71 Cal.2d 1031, 1034,

declared that it had placed no time limitation on the presentation of petitions for writs of habeas corpus.[3] In excusing the delay of two and one-half years in that case, the court noted that the function of a petition for a writ of habeas corpus was to afford relief which could not otherwise be procured. The court observed in *Huddleston* that the petitioner's delays worked primarily to his own disadvantage. We find these remarks pertinent to the instant case. Petitioner's delay has kept him in the penitentiary for an extra two years. It is difficult to conceive where the rights of the People have been harmed by his lack of diligence—unless they intend to sue him for the reasonable cost of his room and board during that time.

Inasmuch as petitioner has also served in excess of 10 years, the maximum sentence for which he could be held absent the prior invalid conviction, his confinement is without legal justification.

The writ of habeas corpus is granted.

Kerrigan, J., and Gabbert, J., concurred.

---

[3]See also *In re Ward,* 64 Cal.2d 672 [51 Cal.Rptr. 272, 414 P.2d 400], in which the Supreme Court said at page 675: "Petitioner has waited 20 years to bring this contention before this court; but since the question is one of excessive punishment, it is a proper matter for us to consider on a writ of habeas corpus, despite his delay. [Citation.]"