Filed 4/2/15  Los Angeles Fed. Credit Union v.  Brandford CA 2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LOS ANGELES FEDERAL CREDIT UNION,<br><br>Cross-complainant and Appellant;<br><br>HOPETON BRANDFORD et al.,<br><br>Cross-complainants and Respondents,<br><br>v.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC,<br><br>Cross-defendant and Appellant. | B251297<br><br>(Los Angeles County Super. Ct. No. LC091707) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank Johnson, Judge.  Affirmed in part and reversed in part.

Anaya Law Group, Alana B. Anaya and Jonathan A. Malek, for Cross-complainant and Appellant Los Angeles Federal Credit Union.

Schlichter & Shonack, Kurt A. Schlichter, Steven C. Shonack, and Cynthia Y. Sun, for Cross-defendant and Appellant CarMax Auto Superstores California, LLC.

No appearance for Cross-complainants and Respondents Hopeton Brandford et al.

\*     \*     \*

A creditor's perfected security interest in a Range Rover vehicle is extinguished in a fraudulent lien sale. The car is then sold to a used car dealer, and then to its current owner. The original creditor convinces the Department of Motor Vehicles (DMV) to reinstate its security interest and sues the person who bought the car at the lien sale, the car's current owner, and the credit union that loaned the current owner money to buy the car in exchange for a perfected security interest on what it thought was clear title. These parties let the original creditor repossess the car, and sue the used car dealer. The trial court resolved their claims in part on summary adjudication and in part at a bench trial. The credit union and used car dealer appeal; we affirm the trial court's rulings as to the former, but reverse as to the latter.

## FACTS AND PROCEDURAL HISTORY

### I.     Facts

The Range Rover at the center of this case has had many owners. In pertinent part (and in chronological order), they were Anahit Margaryan (Margaryan), Anahit Pakhanyan (Pakhanyan), CarMax Auto Superstores California, LLC (CarMax), and Hopeton and Karyl Brandford (Hopeton or, jointly, the Brandfords).

JP Morgan Chase Bank, NA (Chase) loaned Margaryan $40,000 to buy the car and secured that loan with a perfected security interest in the car. At some point, Margaryan fell behind in her payments, and a towing company impounded the car and sold it to Pakhanyan for $4,000 at a lien sale. The sale was fraudulent: Evidence suggested that Margaryan and Pakhanyan were the same, and that Margaryan's son-in-law (who sold her the car) was still driving the car after it was "sold" to Pakhanyan. Chase received notice of the tow yard lien sale from the DMV, but did not intervene to halt the sale and later claimed it was "unaware" of the DMV notices in its own files.

As a result of the lien sale, Chase's security interest no longer appeared on the car's certificate of ownership and Pakhanyan's resulting title was "clear." Pakhanyan then sold the car to CarMax, a used car dealer, for $33,000. CarMax verified the car's clear title by conducting several database searches, two of which showed no prior liens corresponding with the date of Chase's lien and one of which showed a corresponding

lien that was followed by a subsequent, lien-free title transaction. CarMax then sold the car to the Brandfords for $41,481.45. The Brandfords financed the purchase with a loan from Los Angeles Federal Credit Union (LAFCU), and CarMax perfected LAFCU's security interest in the car as collateral.

Chase subsequently realized that the tow yard lien sale was a sham, and somehow persuaded the DMV to reinstate its security interest in the car and to extinguish LAFCU's.

## II. Procedural history

Chase sued Margaryan (with "Pargaryan" [sic] as her alias), the Brandfords and LAFCU. The Brandfords and LAFCU settled with Chase and, as part of that settlement, surrendered the car. Margaryan was dismissed after filing for bankruptcy.

The case nevertheless went forward on a number of cross-claims. LAFCU cross-claimed against CarMax for (1) breach of contract, (2) unjust enrichment, (3) negligence, and (4) negligent misrepresentation. Hopeton cross-claimed against CarMax for (1) breach of contract, (2) negligence, and (3) negligent misrepresentation. CarMax counter-sued LAFCU and Hopeton for a declaration that it was a bona fide purchaser, that it had acquired "good title" to the car, and that it had no liability.

CarMax moved for summary adjudication of its own declaratory relief action, and of the claims in the two actions against it. The trial court granted summary adjudication in CarMax's favor on LAFCU's claims for breach of contract, negligence and negligent misrepresentation; and on Hopeton's negligence claim. The court denied summary adjudication on all remaining claims. CarMax petitioned this court for a writ to overturn these denials, but that petition was summarily denied.

Trial was bifurcated. In the first phase, the trial court (1) declared that CarMax and the Brandfords were both bona fide purchasers for value of the car, (2) declared that CarMax's status as a bona fide purchaser defeated Hopeton's claim for negligent misrepresentation, but (3) nevertheless ruled that CarMax breached its contract with Hopeton because it breached the warranty implied in that contract by Commercial Code section 2312 to transfer good and clear title. The second phase was a bench trial at which

3

the trial court heard the remaining claims—namely, LAFCU's claim for unjust enrichment and Hopeton's breach of contract claim. In a ruling without an opinion, the trial court found CarMax not liable to LAFCU for unjust enrichment, but liable to Hopeton for $6,397 for breach of contract.

LAFCU and CarMax timely appealed.

## DISCUSSION

### I.     LAFCU's appeal

#### A.     *Breach of contract*

When the Brandfords bought the car from CarMax, LAFCU—as the Brandford's lender—issued CarMax a check for $41,481.85. The following language was printed on the back of that check:  "Negotiation of this check by the dealer/payee constitutes acknowledgment of receipt of funds and an express representation by dealer/payee that it will cause maker's security interest in the collateral described in the security interest section of the loan agreement and consumer lending disclosure statement to be perfected as within the time required by law."  LAFCU alleged that this created a contract, which CarMax breached.  The trial court granted summary adjudication to CarMax on this claim because (1) CarMax fulfilled its contractual obligation by perfecting LAFCU's title, and (2) the contract did not further obligate CarMax "to guarantee the state of title," so that LAFCU's loss traceable to the DMV's subsequent resurrection of Chase's security interest did not breach any contractual duty CarMax owed LAFCU.  LAFCU challenges this ruling, and we independently review whether CarMax is entitled to judgment as a matter of law due to the absence of any triable issue of material fact.  (Code Civ. Proc., § 473c, subd. (c); *Garrett v. Howmedica Osteonics Corporation* (2013) 214 Cal.App.4th 173, 180-181.)

The trial court correctly granted summary adjudication to CarMax because the undisputed facts point ineluctably to the conclusion that CarMax never breached any contract it may have had with LAFCU.  (See *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1387 [breach of a contractual term is an essential element of a breach of contract claim].)  The sum total of CarMax's contractual obligations comes from the

4

back of LAFCU's check, but that language only obligated CarMax to "cause [LAFCU's] security interest in the [car] . . . to be perfected as within the time required by law." It is undisputed that CarMax did precisely that: It perfected LAFCU's security interest.

LAFCU argues that (1) CarMax's title to the car was not "good" because of the earlier fraudulent tow yard lien sale, and (2) the trial court erred in reading the contract as merely requiring CarMax to "do [its] best" to perfect title. Both of these claims rest on the same premise: CarMax was contractually obligated to *guarantee* the good title of the car in perpetuity. But CarMax never agreed to that obligation. It is nowhere in the written contract that was the sole interaction between CarMax and LAFCU. There is accordingly no basis for the contractual liability LAFCU seeks to impose.

In light of this conclusion, we need not address CarMax's arguments that the language on back of a check can never form a valid contract.

### B. Unjust enrichment

The trial court ruled that LAFCU did not prove unjust enrichment at trial. LAFCU contends that this ruling was erroneous.

To prevail on an unjust enrichment claim, a plaintiff must establish (1) the defendant received a benefit, and (2) it is "unjust for the [defendant] to retain" that benefit. (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1663 (*Perry*), italics omitted.) In this case, it is undisputed that CarMax obtained a benefit from LAFCU when it kept the purchase money LAFCU supplied for the car. The propriety of the trial court's ruling accordingly turns on whether CarMax's retention of that money is unjust. The trial court issued no statement of decision, so we presume the trial court made this finding, and review the record to determine whether substantial evidence supports a finding that it would not be unjust for CarMax to keep the purchase money. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.) We conclude that it does for two reasons.

First, CarMax qualifies as a bona fide purchaser for value under our state's "full title" doctrine, and it is generally not unjust to allow such a bona fide purchaser to retain the benefit of its purchase (*Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d

5

907, 920; see *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1254]). The Vehicle Code sets forth the exclusive procedure by which security interests in vehicles are to be perfected (Veh. Code, §§ 6300-6303), and requires all perfected security interests to be listed on the DMV-issued certificate of ownership for a vehicle (*id.*, §§ 4451, 4453). "Because this 'full title' system requires all security interests to be listed on the statutory certificate of ownership [citation], a purchaser may rely on the certificate and is not expected to check a centralized set of records to determine whether a security interest has been recorded." (*T&O Mobile Homes v. United Calif. Bank* (1985) 40 Cal.3d 441, 448-449 (*T&O*).) The necessary corollary of this doctrine is that a person is a bona fide purchaser who takes and passes clear title to a vehicle (and thereby extinguishes all prior security interests) if (1) the certificate of ownership reflects no security interest, and (2) the purchaser otherwise has no actual knowledge of any security interests or liens. (*Ibid.*; *Ferraro v. Pacific Finance Corp.* (1970) 8 Cal.App.3d 339, 346, fn. 1; *Louis & Diederich v. Cambridge European Imports* (1987) 189 Cal.App.3d 1574, 1587 (*Louis*).)

CarMax took clear title under the full title doctrine. The DMV's certificate of ownership for the Range Rover did not reflect Chase's (or any other) prior security interest. Moreover, substantial evidence supports the finding that CarMax had no actual knowledge of that security interest. At most, CarMax knew from its database searches that Chase had at one time had a lien on the car that was removed in a subsequent transaction; this was not enough to confer constructive notice of an still-existing lien, let alone actual knowledge of one.

Second, and alternatively, CarMax qualifies as a good faith purchaser for value under California's codification of the Uniform Commercial Code (UCC) and, as noted above, this status generally precludes a finding that its retention of LAFCU's purchase money is unjust. Our analysis of this issue turns on how Chase's perfected security interest in the car was affected by subsequent "transaction[s]" involving that car, so this case lies at the intersection of the "sales" and "secured transactions" divisions of the

6

UCC. (Compare Cal. U. Com. Code §§ 2101 et seq. [sales under division 2] with 9101 et seq. [secured transactions under division 9].) [1]

Once a security interest in a good is perfected (as Chase's was under the Vehicle Code (see § 9311, subd. (a)(2)(A) [deferring to Vehicle Code's procedures for perfecting security interests in vehicles]; Veh. Code, § 6303 [declaring Vehicle Code's perfection procedures to be "exclusive" for vehicles])), that interest is generally not extinguished by a subsequent sale of that good. (§ 9315, subd. (a)(1).) This reflects the longstanding common law rule that a "seller of property can transfer to the buyer no better title than he has himself . . ." (*Siebenhauer v. Bank of California National Assn.* (1930) 211 Cal. 239, 241.) However, there are three exceptions to this general rule. First, a secured creditor's own security interest (but no others) is extinguished if that creditor "authorize[s] the [sale] free of the security interest." (§ 9315, subd. (a)(1).) Second, a seller's own security interest (but no others) is extinguished if the seller is "in the business of selling goods of that kind." (§§ 9320, subd. (a), 1201, subd. (b)(9); *In re Sunrise R.V.* (Bankr. E.D.Cal. 1989) 105 B.R. 587, 591-592.) Third, *all* prior security interests are extinguished if (1) the seller has "voidable title," (2) the buyer is a "good faith purchaser for value," and (3) the good was "delivered under a transaction of purchase," even if that "delivery was procured through fraud punishable as larcenous under the criminal law." (§ 2403, subd. (1) ["A person with voidable title has power to transfer a good title to a good faith purchaser for value."]; *Suburban Motors v. State Farm Mutual Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1360 (*Suburban Motors*).) Because Chase did not authorize the extinguishment of its security interest and because Pakhanyan is not in the business of selling cars (and could not extinguish *Chase's* security interest even if she had been), only the third exception is at issue.

We conclude that this third exception is legally available. Notwithstanding its placement in the division of the UCC dealing with sale of goods and not in the division

---

[1] All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

7

dealing with secured transactions, the plain language of section 2403 addresses what happens to a security interest during certain sales transactions. (§ 2403, subd. (1); accord, *In re Sunrise R.V.*, *supra*, 105 B.R. at p. 591, fn. 12 [examining section 2403 and division 9 in assessing viability of a perfected security interest].) What is more, section 2403 explicitly contemplates that division 9 will apply when its provisions do not. (§ 2403, subd. (4) ["The rights of other purchasers of goods and of lien creditors are governed by the divisions on secured transaction[s] . . ."].) Further, our job is to "'harmonize [the] statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.]'" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) Because section 2403 is not inconsistent with section 9315 or its other two exceptions, it is appropriate to construe section 2403 as a third exception to section 9315's general rule. We are mindful that the Vehicle Code sets forth the mechanism by which ownership of vehicles is to be transferred (Veh. Code, § 5600, subd. (a); Cal U. Com. Code § 2102 [providing that division 2 does not "impair . . . any statute regulating sales to . . . other specified classes of buyers"]; *Quartz of Southern California, Inc. v. Mullen Bros., Inc.* (2007) 151 Cal.App.4th 901, 907-08 [applying Vehicle Code section 5600 rather than division 2]), but section 2403 does not address that mechanism and instead deals with the effect of a "transaction of purchase" on security interests; section 2403 is accordingly not superseded by the Vehicle Code.

Section 2403's exception is also factually applicable because all three of its prerequisites are present. To begin, Pakhanyan had "voidable" title. Title is voidable when procured through fraud, mistake, or undue influence. (*Regent Alliance Ltd. v. Rabizadeh* (2014) 231 Cal.App.4th 1177, 1183 [same]; *Fish v. Benson* (1886) 71 Cal. 428, 440 [same].) That is what we have here: A fraudulent lien sale from Margaryan to Pakhanyan. (See *Suburban Motors*, *supra*, 218 Cal.App.3d at p. 1360.) LAFCU argues that title should be considered "void" (rather than voidable) because Margaryan and Pakhanyan's sham sale is functionally indistinguishable from an outright theft of the car, and it is well settled that theft of a good does not extinguish prior security interests or

8

liens in that good. (*Ibid*; *Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421, 432-433.) But the longstanding distinction between void and voidable title turns on the means by which the good is transferred, and this case involves a fraudulent transaction that falls on the voidable side of the line.

CarMax is also a "good faith purchaser for value." This definition is met if the purchaser buys the vehicle when the pertinent "registration and ownership doctrines" reveal no defect in title; when no other terms of the transaction are suspicious; and when the purchaser otherwise has no actual knowledge of any title defect. (§§ 2103, subd. (4) [pointing to generalized definitions], 1201, subd. (b)(20) [generally defining "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing"]; *Kelley Kar Co. v. Maryland Casualty Co.*(1956) 142 Cal.App.2d 263, 264-265 [unusually low price may give rise to suspicion]; *Louis*, *supra*, 189 Cal.App.3d at p. 1587 [imputing knowledge from pertinent documents].) Here, as noted above, substantial evidence supports a finding that the "registration and ownership documents" revealed no defect in title; that the terms of the transaction (including the $33,000 price tag) appeared legitimate; and that CarMax otherwise had no actual knowledge of any title defect.

CarMax obtained delivery of the car through a "transaction of purchase" because, as noted above, it paid Pahkanyan $33,000 for the Range Rover.

LAFCU levels three attacks. First, it argues that the full title doctrine does not apply because that doctrine is inapplicable when a car is stolen (*Suburban Motors*, *supra*, 218 Cal.App.3d at pp. 1362-1363), and the sham lien sale between Margaryan and Pakhanyan *effectively* stole the car. But, as noted above, they did not *actually* steal the car. The full title doctrine has been found to confer clear title on bona fide purchasers when earlier lien holders did not perfect their security interests (*ibid.*; *Louis*, *supra*, 189 Cal.App.3d at pp. 1578, 1589), and when the DMV mistakenly did not perfect a security interest properly presented to it (*T&O*, *supra*, 40 Cal.3d at p. 451). The doctrine is equally applicable when the certificate of ownership reflects no security interests due to fraud. "A rule which allowed reliance on the absence of lien notations on a certificate of [ownership] if such absence resulted from an innocent mistake or clerical error but not if

9

such absence resulted from fraud would negate any ability to rely on the certificate of [ownership]," thereby undermining the chief purpose of the full title doctrine. (*Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesales, Inc.* (Va. 1998) 256 Va. 243, 247.) LAFCU's argument would not in any event affect the result of this case because, as we conclude above, CarMax also qualifies as a good faith purchaser for value under the UCC.

Second, LAFCU argues that allowing CarMax to retain the loan proceeds is "unjust"—notwithstanding CarMax's status as a bona fide and good faith purchaser— because, as between two victims of Margaryan's and Pakhanyan's fraud (itself and CarMax), CarMax was the more negligent because it could have conducted a more thorough investigation of title by obtaining copies of the vehicle's history from the DMV. (See Civ. Code, § 3543 ["Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."].) Like the trial court, we agree that CarMax and LAFCU are both victims of a sham transaction effected by Margaryan and Pakahnyan, and by Chases's unexplained success in persuading the DMV to simultaneously resurrect Chase's security interest and void LACFU's. But substantial evidence supports a finding that CarMax was not the more negligent party. CarMax made substantial efforts to verify the clear title of the car. Moreover, LAFCU elected to settle with Chase and to surrender the car despite the fact that Chase had notice of the tow yard lien sale and did not intervene; LAFCU's tactical litigation decision removed from the table one of the key players who might have shared in the loss.

Lastly, LAFCU argues that the trial court was wrong to be concerned that CarMax might have to pay for the car multiple times—once to Pakhanyan when it bought the car, and again to LAFCU and the Brandfords if they prevailed on their claims. This concern could validly be considered as part of the equities, but is ultimately irrelevant in this case in light of CarMax's status as a bond fide and good faith purchaser. This argument consequently provides no basis for reversal.

## II.     CarMax's cross-appeal

CarMax purports to appeal (1) the trial court's denials of summary adjudication of its declaratory relief action and of all the claims brought by LAFCU and Hopeton, and (2) the trial court's express finding, following trial, that CarMax breached its contract with Hopeton (and its implicit rejection of the portion of CarMax's declaratory relief claim seeking absolution of liability).  We reject CarMax's first argument because an order denying summary adjudication is not separately appealable (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343), and is generally not a basis for relief on appeal from a judgment when, as here, the "same question[s]" were later decided on the merits at trial (*ibid.*).

In its ruling on Hopeton's breach of contract claim, the trial court (1) found that CarMax was a bona fide or good faith purchaser but (2) concluded that section 2312 implied into CarMax's sales contract an implied warranty of good title that CarMax breached.  (Although Hopeton initially pled a breach of contract claim, CarMax did not object when Hopeton shifted to a breach of implied warranty claim prior to trial.  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 90 [absence of objection constitutes waiver to shift in legal theory].))  We review the trial court's first ruling for substantial evidence, and review the second ruling de novo because it turns on the application of section 2312 to undisputed facts (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384-385; *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032.)  For the reasons described above, substantial evidence supports a finding that CarMax was a bona fide and good faith purchaser.

However, we agree with CarMax that the trial court erred in concluding that CarMax breached the implied warranty term of its sales contract.  Section 2312 implies in every "contract for sale" "a warranty by the seller that [1] the title conveyed shall be good, and its transfer rightful; and [2] the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting [in this case, the Brandfords] has no knowledge."  (§ 2312, subd. (1).)  The trial court's explicit finding that CarMax is a bona fide or good faith purchaser is, under the law, an implicit

11

finding that CarMax's title was "good" and that it delivered the car "free from any security interest or other lien or encumbrance" at the time it transferred the car to the Brandfords. To be sure, Chase later convinced the DMV to swap its previously perfected (and later extinguished) security interest for LAFCU's perfected security interest. But section 2312's warranty of good title is not an insurance policy against any and all subsequent acts by the DMV in acceding to the demands of creditors whose rights have been extinguished by the Vehicle and/or Commercial Codes. No cases interpreting section 2312 have so held, and its plain language does not so provide. The breach of contract and declaratory relief rulings are consequently reversed, with judgment to be entered for CarMax.

## DISPOSITION

The judgment in favor of CarMax against LAFCU is affirmed. The judgment in favor of Hopeton against CarMax is reversed, with instructions to enter judgment for CarMax. Each party to bear its own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

12